IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TODD ERIC SAGAL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-21-273-GLJ** |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant, Todd Eric Sagal, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a

1

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairments *is not* medically severe, disability benefits are denied. If he *does* have a medically sever impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was forty-eight years old at the time of the administrative hearing (Tr. 35). He completed the eleventh grade and did not get a GED. (Tr. 35, 232). He has past relevant work experience as a maintenance mechanic (Tr. 25). Claimant alleges an inability to work since September 23, 2013, due to back injury, chronic pain, obesity, and diminished mental capacity. (Tr. 38).

### Procedural History

On June 11, 2019, Claimant protectively applied for disability insurance benefits and supplemental security income under Title II (42 U.S.C. § 401, *et* seq.) and Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act respectively. His applications were denied initially and upon reconsideration.  On December 17, 2020, Administrative Law Judge ("ALJ") Edward Starr conducted an administrative hearing in Poteau, Oklahoma, and entered an unfavorable decision on January 12, 2021 (Tr. 15-27, 34-56). The Appeals Council denied review making the ALJ's opinion the Commissioner's final decision for the purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation (Tr. 26). At step two he determined that Claimant had the severe impairments of degenerative disc disease, chronic pain syndrome, obesity, and depression. (Tr. 17). He found at step three that Claimant did not meet any Listing (Tr. 18). At step four he found that Claimant was

incapable of past relevant work as a maintenance mechanic, but had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except he cannot climb ladders, ropes, or scaffolds and is limited to simple, routine, repetitive tasks. (Tr. 18, 25). At step five the ALJ concluded that Claimant was not disabled because there are jobs that exist in significant numbers in the national economy that Claimant can perform, *e.g.*, cutter/paster/trimmer, nut sorter, document specialist/clerk. (Tr. 25-26).

**Review**

Claimant contends that the ALJ erred by failing to properly assess the medical source opinions, failing to properly assess the consistency of Claimant's complaints with the evidence, and failing to perform a proper determination at step five. More specifically, Claimant contends the ALJ failed to cite specific evidence or give substantive reasons when supporting his analysis of the claimant's RFC, failed to adequately support his consistency findings with specific evidence or specific reasons, and failed to include all Claimant's impairments in the hypothetical question used to determine the availability of other jobs in the national economy at step five. Additionally, Claimant contends that the 35,000 jobs the ALJ found to exist do not rise to the level of a significant number of jobs in the national economy. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found at step two that Claimant had the severe impairments of degenerative disk disease, chronic pain syndrome, obesity, and depression. (Tr. 17). The medical evidence in the record largely pertains to Claimant's physical impairments, namely an on-the-job injury that occurred on September 22, 2013, when he suffered a back injury while

4

lifting heavy equipment. (Tr. 305). Thereafter, Claimant was taken to the Integris Canadian Valley Regional Hospital emergency room and was diagnosed via CT scan with moderate to severe bilateral neural foraminal stenosis at L5-S1 with a broad disc bulge, as well as some spondylolisthesis and mild spinal stenosis. (Tr. 306). At subsequent appointments in December 2013 and January 2014, Dr. James Odor examined Claimant and determined he could lift a maximum of 25 lbs. and was not to crawl or climb, but could operate machinery and drive, and could bend, stoop, twist, kneel, and squat with a restricted capacity. (Tr. 386, 394). On February 11, 2014, Claimant underwent spinal fusion surgery with no reported complications. (Tr. 379-383). The results were largely positive (Tr. 369-377), and on November 13, 2014, Dr. Odor removed the hardware and found the spinal fusion to be solid. (Tr. 367). Shortly thereafter, Claimant began to report pain and difficulty sleeping (Tr. 363, 365). On January 23, 2015, an MRI scan of the lumbar spine revealed a small disc protrusion, a small disc bulge, mild degenerative changes, and disc dehydration (Tr. 359, 361). On February 13, 2015, Dr. Odor performed a steroid injection in the area to help with Claimant's pain, but neither this nor a work-hardening physical therapy program provided any long-lasting relief. (Tr. 354-56).

On May 27, 2015, a CT scan revealed a gap in the interbody portion of Claimant's spinal fusion consistent with his reported pain. (Tr. 350). Dr. Odor performed a bilateral posterolateral refusion surgery on June 29, 2015. (Tr. 348-49). Follow-up appointments between August 3, 2015, and January 20, 2016, revealed a generally positive prognosis with some intermittent nerve pain and numbness, as well as pain over the hardware site. (Tr. 331, 336-46). On February 9, 2016, a Functional Capacity Evaluation performed

by Functional Assessment Centers of Oklahoma found that Claimant was capable of safely performing light and some medium physical demand activities with a maximum lifting weight of 25 lbs. (Tr. 333). On March 24, 2016, Dr. Odor removed the hardware in Claimant's back and found that the refusion was solid. (Tr. 327). By May 26, 2016, Dr. Odor found that Claimant had reached maximal medical improvement, would need pain management, and should be permanently restricted to lifting a maximum of 25 lbs., with no crawling or climbing, and a restricted capacity for bending, stooping, twisting, kneeling, and squatting. (Tr. 322-25). In June 2018, Dr. Emery Reynolds examined Claimant who reported he was active during the day and could help friends with projects but had no real change or improvement in his pain since he was last seen by Dr. Odor. Dr. Reynolds agreed that further surgical intervention would not be useful. (Tr. 401-09). Through at least 2020, Claimant received pain management care under Erin Rowland-Brooks, PA-C, at the Comprehensive Pain Center, without significant improvement. (Tr. 413-92, 499-527).

State examiners determined initially and upon reconsideration that Claimant had the RFC to perform light work subject to postural limitations. (Tr. 59-70, 87-94).

At the administrative hearing, Claimant testified that he had multiple back surgeries and that his back problems intermittently cause him to be bedridden for days or weeks at a time, and that he is reliant on his son for day-to-day chores. (Tr. 39, 43). Claimant testified that he can walk approximately twenty-five feet without needing to stop and uses a nonprescription walking stick (Tr. 45-46). He further testified that he can stand for fifteen to twenty minutes, but then must sit for at least 45 minutes to recover. (Tr. 45). He noted that sitting for long periods of time causes pain down both sides of his legs and into his

feet. (Tr. 47). He testified that he is unable to lift more than ten pounds using both hands and that his condition has worsened over the six to eight months prior to the hearing. Claimant also states that while he is undergoing pain management treatment, the prescriptions he takes as a part of that treatment cause him to suffer mental fog, memory loss, and drowsiness to the point that he unintentionally falls asleep throughout the day. (Tr. 42, 44, 50).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs a claimant could perform given the RFC of a younger individual with limited education, limited to sedentary work, who could never use ropes, ladders, or scaffolds, but could occasionally use stairs and ramps, could occasionally balance, crawl, kneel, stoop, and crouch, must avoid hazards like moving machinery or unprotected heights, and is limited to simple repetitive tasks. (Tr. 52-53). The VE indicated that Claimant could not return to his past work, but indicated three sedentary jobs that such a person could perform, namely: (i) cutter/paster/trimmer, DICOT § 249.587-014, with approximately 12,000 jobs available nationally; (ii) nut sorter, DICOT § 521.687-086, with approximately 3,000 jobs available nationally; and (iii) document clerk, DICOT § 249.587-018, with approximately 20,000 jobs available nationally. The ALJ offered two modified hypotheticals in which a person would also require either unscheduled rest periods and an at-will sit/stand option or would suffer absenteeism three times monthly. The VE answered that no jobs would meet either modified hypothetical.

In his written opinion at step four, the ALJ determined that Claimant's RFC included the limitations from the unmodified hypothetical described above before

summarizing Claimant's hearing testimony and much of the evidence in the record. (Tr. 20-25). The ALJ found that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were too inconsistent with the record as a whole to support a more limited RFC. (Tr. 25) The ALJ noted two 2019 function reports in which Claimant stated he could mow his yard weekly, care for his dog, go fishing, prepare meals, handle finances, and drive. (Tr. 22).   The ALJ also noted a 2018 report by Dr. Reynolds stating that Claimant is able to be up and around during the day and was able to help his friends with various projects. (Tr. 23). The ALJ then detailed Claimant's treatment history with Dr. Odor before finding Dr. Odor's opinion that Claimant could lift up to twenty-five-pounds to be unduly optimistic, noting that it was inconsistent with Claimant's history of back surgeries, multiple function reports, medical records, and Claimant's testimony as to his subjective symptoms. (Tr. 24). Similarly, the ALJ found the 'light' RFC findings of the state agency consultants unpersuasive considering Claimant's testimony and medical findings showing Claimant's obesity, lack of extension in the sacroiliac joint due to severe pain, and flattening of the normal lumbar curve (Tr. 24) The ALJ also pointed to an MRI detailing bilateral lateral recess stenosis, moderate bilateral neural foraminal stenosis, and central canal stenosis. The ALJ then concluded that although Claimant is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that he can perform and that he was therefore not disabled.

## I.       Analysis of Medical Evidence

Claimant first contends that the ALJ failed to apply the proper legal standards when analyzing the medical opinions of record. Specifically, Claimant contends that the ALJ

invented an RFC divorced from substantial evidence and failed to explain or cite evidence as to why he found the light RFC finding of agency consultants and the twenty-five-pound lifting limitation set by Dr. Odor unpersuasive. In discussing the opinions of Dr. Odor and the agency consultants, the ALJ notes that they are controverted by Claimant's history of back surgery, Claimant's obesity, Claimant's testimony, evidence of a flattened lumbar curve,[2] and other medical findings. (Tr. 24). Taking this evidence into account, the ALJ found Claimant had a more restrictive sedentary RFC than indicated by Dr. Odor and the agency consultants. Essentially, the difference between the ALJ's RFC and the opinions of the agency consultants and Dr. Odor was to Claimant's benefit. The Tenth Circuit has held that it is proper for an ALJ to moderate a medical opinion favorably toward the claimant without explaining the favorable modification. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Thus, any failure of the ALJ to properly analyze these opinions, if one exists, constitutes, at best, harmless error. *See Kohler v. Colvin*, 2017 WL 3589217, at *7 (D.N.M. Jan. 18, 2017) ("Indeed, the only opinion that Plaintiff specifically discussed, that of Dr. Glass, was actually less restrictive than the RFC that was assessed by the ALJ. Therefore, any error by the ALJ in failing to discuss the § 404.1527(c) factors was harmless."); *see also White v. Saul*, 2019 WL 6337445 at *3 (W.D. Okla. Nov. 4, 2019) ("[T]he ALJ's failure to explain why she adopted a more restrictive RFC than that encompassed within the medical opinions to which she gave great weight constitutes

---

[2] Claimant contends in his Opening Brief that evidence of a normal lumbar curve does not support the ALJ's conclusion but seems to have misread the ALJ's order which notes the "*flattening* of the normal lumbar curve[.]" (Tr. 24) (emphasis added).

harmless error . . ."). Claimant's contention that the ALJ invented his own RFC, divorced

from substantial evidence, is without merit.

## II.      Analysis of Subjective Symptoms

Claimant next contends that the ALJ failed to properly assess the consistency of

Claimant's complaints with the evidence of record by failing to perform a proper discussion

of the SSR 16-3p consistency factors. The Commissioner uses a two-step process to

evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically
> determinable physical or mental impairment(s) that could reasonably be
> expected to produce an individual's symptoms, such as pain. Second … we
> evaluate the intensity and persistence of those symptoms to determine the
> extent to which the symptoms limit an individual's ability to perform work-
> related activities …

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at 3 (October 25, 2017).[3]

Tenth Circuit precedent is similar to the Commissioner's regulations but

characterizes the evaluation as a three-part test. *See, e.g.*, *Keyes-Zachary*, 695 F.3d at 1166-

67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As

part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R.

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.*  at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence.  *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).  This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

§§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at 7-8.

An ALJ is not required to conduct a "formalistic factor-by-factor recitation of evidence[,]" so long as the ALJ sets forth the specific evidence upon which he or she relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). An ALJ's symptoms evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801.

Here, the ALJ considers Claimant's daily activities, Claimant's pain levels with and without medication, postural aggravators, medication side effects, and his treatment history. (Tr. 21-24). The ALJ specifically notes instances where the reports of Claimant's treating physicians are inconsistent with Claimant's reported symptoms, including many of Claimant's own statements. (Tr. 23). Claimant's contention that the ALJ did not perform even a minimal discussion of the consistency factors is without merit. The Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that Claimant's subjective complaints were inconsistent with the medical evidence

to the extent alleged, *i.e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. The Court cannot conclude that the ALJ misread the evidence as a whole in his subjective symptoms analysis. *See Casias*, 933 F.2d at 801.

### III.   Hypotheticals Posed to Vocational Expert

Claimant next contends that, given the ALJ's flawed analysis of both the medical opinions of record and the consistency of Claimant's testimony, the ALJ necessarily erred in his formulation of the hypotheticals posed to the Vocational Expert by failing to account for all of Claimant's impairments. Having addressed these arguments above, the Court finds that the ALJ's hypotheticals were properly posed.

### IV.   Significance of the Number of Jobs in the National Economy

Finally, Claimant contends that 35,000 jobs are not a significant number of jobs in the national economy. The Court notes that courts within the Tenth Circuit have declined to set a rule establishing what constitutes a significant number of jobs for purposes of the Social Security Act. *See, e.g., Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Instead, the ALJ should determine numerical significance based on an individualized evaluation of the facts of each case and, most importantly, his or her own common sense. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (citing *Trimiar*, 966 F.2d at 1330). In this case, because the ALJ found 35,000 jobs to be a significant number, the Court's role is to review those numbers using the substantial evidence standard set forth above. *Id.* at 1143-44 (explaining the difference between reviewing an actual ALJ's factual finding of significance and supplying a dispositive finding for an ALJ). Here, the Court is persuaded that the ALJ's finding, *i.e.*, that these numbers of jobs in the national economy

constitute a significant number, is supported by substantial evidence. *See Trimiar*, 966 F.2d at 1332 (noting that courts need not "Strain at numbers" when deciding whether an ALJ's findings concerning what constitutes a significant number of jobs if the ALJ's decision is otherwise supported by substantial evidence); *see also Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) ("The *Rogers* [*v. Astrue*, 312 Fed. Appx. 138, 142 (10th Cir. 2009)] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The court is persuaded by *Rogers* and finds that 32,000 utility tractor jobs in the national economy is also significant."). Furthermore, the ALJ's determination is consistent with courts in this circuit and persuasive authority from other circuits suggesting that fewer than these numbers of jobs can constitute a significant number of jobs in the national economy. *See*, *e.g., Rogers*, 312 F. Appx. at 142 (finding the ALJ could rely on 11,00 jobs nationally as substantial evidence to support her finding of non-disability); *Jones v. Colvin*, 215 WL 5573074 at *3 (E.D. Okla. Sept 22, 2015) (finding 15,520 jobs in the national economy significant); *Holmes v. Saul*, 2019 WL 3290492 at *6 (D. N.M. July 22, 2019) (finding 11,700 jobs in the national economy significant). The VE is simply required to provide an estimate of the number of jobs available based on the hypothetical proposed, which he did, and the ALJ's findings that these jobs were available in significant numbers is sufficient. As such, the ALJ's findings at step five of the sequential evaluation are supported by substantial evidence.

The Court finds that taking the whole of the evidence into account, the conclusion that Claimant could perform sedentary work with the aforementioned limitations is thus

well supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard*, 379 F.3d at 959). Accordingly, the decision of the ALJ is hereby affirmed.

### Conclusion

In summary, the Court finds that the correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 9th day of February, 2023.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**